CANTERBURY HEALTH CARE, INC v DEPARTMENT OF TREASURY

Docket No. 179267. Submitted August 21, 1996, at Detroit. Decided November 8, 1996, at 9:20 A.M.

Canterbury Health Care, Inc., a nonprofit subsidiary corporation of St. Luke's Episcopal Church Home, which has traditionally served the aged and to which the Internal Revenue Service has granted charitable tax status, and Granger Construction Company petitioned the Tax Tribunal to declare Canterbury's nursing center unit, a part of the Canterbury-on-the-Lake facility, a nonprofit hospital so that Granger, a contractor hired to build the facility, would be exempt from paying sales and use taxes on materials for the construction of the nursing center unit. Canterbury, a nonprofit corporation, had been granted an exemption from paying state sales and use taxes under statutes regarding nonprofit hospitals or nonprofit homes operated by a regularly organized church for the care and maintenance of children or aged persons. The Department of Treasury had denied Canterbury's application for an exemption for Granger because the nursing center did not qualify as a hospital as defined by the department. The Tax Tribunal ruled that the definition of "hospital" in the Administrative Code, 1979 AC, R 205.87, was applicable, that the nursing center did not qualify as a hospital, and, thus, that Granger was not entitled to a tax exemption. The petitioners appealed.

The Court of Appeals held:

1. The "contractor's exemption" contained in the Use Tax Act, MCL 205.94(l); MSA 7.555(4)(l), applies to only those contractors constructing projects for nonprofit hospitals and nonprofit housing entities. When the Legislature narrowed the exemption in 1970 to exclude others that had previously fallen within the exemption, it was aware of the definition of "hospital" under Rule 205.87. Had the Legislature intended the contractor's exemption to apply to a nursing care and retirement center such as Canterbury-on-the-Lake, it would have named specifically such facilities, as it did in MCL 205.94(i); MSA 7.555(4)(i).

2. The Department of Treasury's reliance on Rule 205.87 for the definition of hospital is reasonable. The Legislature's failure to alter

the definition when it amended the Use Tax Act reflects its acquiescence to that definition.

3. The nursing center is not a hospital under Rule 205.87. The nursing center does not meet the separate identity criterion of the rule and fails to meet the remaining requirements under the rule that its primary purpose be to provide medical, obstetrical, psychiatric, or surgical attention and nursing to persons requiring such services. The nursing center does not provide those services typically offered by a hospital and its primary purpose is to provide nursing care, not hospital care. The inclusion of the terms "obstetrical, psychiatric, or surgical" care implies that the Legislature intended a more complex definition of a hospital, one that the nursing center does not meet.

Affirmed.

1. TAXATION — USE TAXES — CONTRACTOR'S EXEMPTION — WORDS AND PHRASES — "NONPROFIT HOSPITAL."

The contractor's exemption from use taxes applies to tangible personal property that contractors purchase and use during the construction, alteration, or improvement of real estate of nonprofit hospitals and nonprofit housing entities; the Legislature's failure to alter the Department of Treasury's definition of "hospital" contained in the Administrative Code, 1979 AC, R 205.87, when it narrowed the contractor's exemption in 1970 reflects the Legislature's acquiescence to that definition (1970 PA 15, MCL 205.94[1]; MSA 7.555[4][I]).

2. ADMINISTRATIVE LAW — HOSPITALS — TAXATION.

A hospital, for purposes of the Department of Treasury's rule regarding exemptions from sales tax, must be a separately organized institution or establishment, have as its primary purpose the provision of medical, obstetrical, psychiatric, or surgical attention and nursing, and provide such services to persons requiring such services (1979 AC, R 205.87).

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Samuel J. McKim, III,* and *Joanne B. Faycurry*), for the petitioners.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Ross H. Bishop* and *Jack Van Coevering,* Assistant Attorneys General, for the Department of Treasury.

Before: CORRIGAN, P.J., and JANSEN and M. WARSHAW-SKY,* JJ.

CORRIGAN, P.J. In this tax case, petitioners appeal by right the order of the Tax Tribunal denying the contractor petitioner an exemption from the sales and use tax on materials purchased for and used to construct a nonprofit nursing care and retirement facility. We affirm.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Petitioner Canterbury Health Care, Inc., is a nonprofit subsidiary corporation of St. Luke's Episcopal Church Home, which has traditionally served the aged and to which the Internal Revenue Service granted charitable tax status. Canterbury hired petitioner Granger Construction Company to build Canterbury-on-the-Lake, a continuing-care retirement center. Canterbury-on-the-Lake has three distinct but connected buildings containing 140 nursing beds, 39 assisted-living units, and 75 independent-living units; it began operating in February 1994.

In 1992, the Michigan Department of Treasury granted Canterbury an exemption from paying sales tax under MCL 205.54a(a); MSA 7.525(a), which provides in part that nonprofit hospitals or nonprofit homes operated by a regularly organized church "for the care and maintenance of children or aged persons" need not pay sales tax. The department also excused Canterbury from paying the use tax under MCL 205.94(i); MSA 7.555(4)(i), which exempts property or services sold to a nonprofit hospital or home for the care and maintenance of children or aged per-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sons operated by a regularly organized church. Canterbury thus did not have to pay sales or use taxes on tangible personal property that it purchased for the facility.

Granger, however, was not exempt from paying sales and use taxes on materials for the construction because property that Granger purchased was not deemed personal property when it was "sold" to Canterbury.[1] For Granger, a contractor, to obtain an exemption from the taxes, statutory law requires that Canterbury-on-the-Lake meet the definition of a nonprofit hospital. MCL 205.94(1); MSA 7.555(4)(1).

In 1993, while construction of Canterbury-on-the-Lake was underway, Canterbury requested a revenue ruling on whether the materials purchased by Granger were tax-exempt, asserting that Canterbury-on-the-Lake was a nonprofit hospital. The parties stipulated that the buildings with the assisted-living units and the independent-living units did not meet the definition of a nonprofit hospital. At issue is the building with the 140 nursing beds, referred to in this opinion as the "nursing center."

In his ruling, the Commissioner of Revenue for the Michigan Department of Treasury relied on the definition of "hospital" in the Administrative Code, 1979 AC, R 205.87, because the Use Tax Act, MCL 205.91 *et seq.*; MSA 7.555(1) *et seq.*, does not define the term. Rule 205.87 defines a hospital as "a separately organized institution or establishment, the primary purpose

---

[1] See MCL 205.51(c); MSA 7.521(c), which provides in part: " 'Sale at retail' includes the sale of tangible personal property to persons directly engaged in the business of constructing, altering, repairing, or improving real estate for others except property affixed to and made a structural part of the real estate of a nonprofit hospital. . . ."

of which is to provide medical, obstetrical, psychiatric, or surgical attention and nursing to persons requiring the same."[2] Also, the Department of Treasury relied on the Public Health Code's list of a hospital's functions, which include "inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative condition requiring the daily direction or supervision of a physician." MCL 333.20106(5); MSA 14.15(20106)(5). The department denied Canterbury's application for an exemption for Granger because the nursing center did not qualify as a hospital.[3]

Petitioners thereafter asked the Michigan Tax Tribunal to declare the nursing center a nonprofit hospital and to exempt Granger from paying sales and use taxes. Petitioners then moved for partial summary disposition, urging the tribunal to adopt an expanded definition of a hospital. The Tax Tribunal declined to redefine "hospital" and ruled that Rule 205.87, cited above, would control in this case. The tribunal then denied petitioners' motion for partial summary disposition. In 1994, the Tax Tribunal ruled on the remaining issue: whether the nursing center met the definition of a hospital under Rule 205.87. In a detailed opinion, the tribunal decided that the nursing center did not qualify as a hospital and that Granger thus

---

[2] As originally enacted in 1944, Rule 205.87 contained the word "and" before the term "surgical attention." 1944 AC, R 205.87.

[3] Petitioners claim that the department denied the exemption because Canterbury-on-the-Lake was not licensed as a hospital. Petitioners' interpretation of the department's decision is too narrow. A review of the decision reveals that the department also considered the legislative intent and the definition of a hospital under Rule 205.87 and under the Public Health Code.

was not entitled to a tax exemption. Petitioners appeal.

## II. THE DEFINITION OF "HOSPITAL"

Petitioners first maintain that the Tax Tribunal misinterpreted the meaning of "hospital" in the Use Tax Act. Petitioners contend that the Legislature intended that facilities such as the nursing center would meet the definition of a nonprofit hospital. This Court has not had an earlier occasion to rule on the definition of a hospital under the Use Tax Act.

In reviewing decisions from the Tax Tribunal, this Court is limited to deciding whether the tribunal's factual findings are supported by competent, material, and substantial evidence. More than a scintilla of evidence is required, although a preponderance of the evidence is not necessary. In the absence of fraud, this Court reviews whether the Tax Tribunal made an error of law or adopted an incorrect legal principle. *Fairplains Twp v Montcalm Co Bd of Comm'rs*, 214 Mich App 365, 372; 542 NW2d 897 (1995); *APCOA, Inc v Dep't of Treasury*, 212 Mich App 114, 117; 536 NW2d 785 (1995). Additionally, petitioners ask this Court to examine the tribunal's interpretation of the Use Tax Act. Statutory interpretation is a question of law subject to review de novo on appeal. *DeKoning v Dep't of Treasury*, 211 Mich App 359, 361; 536 NW2d 231 (1995).

### A. HISTORY OF THE CONTRACTOR'S EXEMPTION

Petitioners contend that Granger is exempt from the use tax under the "contractor's exemption," MCL 205.94(1); MSA 7.555(4)(1), which states that the use tax does not apply to

> [p]roperty purchased by a person engaged in the business of constructing, altering, repairing, or improving real estate for others to the extent the property is affixed to and made a structural part of the real estate of a nonprofit hospital or a nonprofit housing entity . . . . A nonprofit hospital or nonprofit housing includes only the property of a nonprofit hospital or the homes or dwelling places constructed by a nonprofit housing entity, the income or property of which does not directly or indirectly inure to the benefit of an individual, private stockholder, or other private person.

In 1949, the Legislature amended the Use Tax Act to create the contractor's exemption. The contractor's exemption applied to tangible personal property that contractors purchased and used during the construction, alteration, or improvement of real estate owned by nonprofit groups, including hospitals.[4] In 1970, the Legislature narrowed the contractor's exemption by excluding all groups that previously had fallen within that exemption—except for nonprofit hospitals and nonprofit housing entities.

The sparse legislative history in existence shows that the 1969 bill to amend the contractor's exemption was designed to *limit* the exemption. Executive Legislative Analysis, SB 1092 and SB 1093, November 7, 1969. In support of the limitation, the bill analysis noted that the estimated tax loss from the contractor's exemption was about $10 million. The change was also recommended to eliminate any evasion when materials purchased for an exempt job would be converted for use on a taxable job.

---

[4] Before the creation of the contractor's exemption, the Use Tax Act did not contain the term "hospital" in the nonprofit exemption.

B. LEGISLATIVE INTENT

When the Legislature narrowed the contractor's exemption in 1970, limiting it to nonprofit hospitals and housing entities, it presumably was aware of the definition of hospital under Rule 205.87. *ADVO-Systems, Inc v Dep't of Treasury*, 186 Mich App 419, 426; 465 NW2d 349 (1990). Had the Legislature disagreed with that definition, it could have defined that term differently in the Use Tax Act itself. " '[L]egislative silence in the face of an agency's construction of a statute "can only be construed as consent to the accuracy of that interpretation." ' " *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 490; 499 NW2d 367 (1993) (citations omitted).

In construing statutory meaning, a court's primary goal is to ascertain and give effect to legislative intent. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993); *State Treasurer v Schuster*, 215 Mich App 347, 351; 547 NW2d 332 (1996). This Court looks to the specific statutory language to determine the intent of the Legislature. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to intend the meaning that a statute plainly expresses. *Vargo v Sauer*, 215 Mich App 389, 395; 547 NW2d 40 (1996). Judicial construction of a statute is not permitted where the plain and ordinary meaning of the language is clear. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996);[5]

---

[5] *Tryc* also involved the distinction between a nursing home and a hospital. In *Tryc*, however, the government immunity statute defined the term "hospital." 451 Mich 135.

*Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 322; 506 NW2d 283 (1993).

Tax exemptions are the antithesis of tax equality. *ADVO-Systems*, *supra* at 423. Generally, tax exemptions are strictly construed in favor of the taxing authority. *Saginaw General Hosp v Saginaw*, 208 Mich App 595, 598; 528 NW2d 805 (1995). This Court should not, however, produce a strained construction that is adverse to legislative intent. *Id.* Under the clear language of the statute, the Legislature intended to limit the contractor's exemption to apply to only those contractors constructing projects for nonprofit hospitals and nonprofit housing entities. Had the Legislature intended to expand the exemption, it would have included entities other than nonprofit hospitals and nonprofit housing facilities.

Additionally, the term "hospital" appears in MCL 205.94(i); MSA 7.555(4)(i), which states in pertinent part that the use tax does not apply to

> [p]roperty or services sold to a school, hospital, or home for the care and maintenance of children or aged persons, operated by an entity of government, a regularly organized church, religious, or fraternal organization, a veterans' organization, or a corporation incorporated under the laws of this state, if not operated for profit, and if the income or benefit from the operation does not inure, in whole or in part, to an individual or private shareholder, directly or indirectly, and if the activities of the entity or agency are carried on exclusively for the benefit of the public at large and are not limited to the advantage, interests, and benefits of its members or a restricted group.

In the above subsection, the Legislature listed particular entities as exempt: schools, hospitals, and homes for the care of children or aged persons. Like-

wise, the Legislature listed particular entities within the contractor's exemption: nonprofit hospitals and nonprofit housing entities. Had the Legislature intended the contractor's exemption to apply to a nursing care and retirement center such as Canterbury-on-the-Lake, it would have named specifically such facilities as it did in the above subsection.

Petitioners also argue that the nursing center's lack of licensure as a hospital should not control whether it meets the definition of a hospital. Petitioners' argument is baseless because the definition of a hospital under Rule 205.87 does not require licensure.[6]

Petitioners next propose to borrow the definition of a hospital contained in the Hospital Finance Authority Act, MCL 331.31 *et seq.*; MSA 14.1220(1) *et seq.* Petitioners failed to raise this issue below and failed to present authority for their proposition. *Gortney v Norfolk & W R Co*, 216 Mich App 535, 544; 549 NW2d 612 (1996); *Ramsey v Michigan Underground Storage Tank Financial Assurance Policy Bd*, 210 Mich App 267, 271; 533 NW2d 4 (1995). In any event, we decline to borrow definitions not involving tax exemptions.

C. THE DEPARTMENT OF TREASURY'S INTERPRETATION

When interpreting the contractor's exemption, the Department of Treasury relied on the definition of a hospital under Rule 205.87. The Legislature is presumed to be familiar with the interpretation of a statute, especially when made by the administrative body charged with the duty of administering or enforcing that statute. *Smith v Smith*, 433 Mich 606, 637, n 3; 447 NW2d 715 (1989). Petitioners request this Court

---

[6] See note 3, *supra.*

to construe the term hospital according to its common usage.[7] This Court, however, generally defers to the longstanding construction of statutory provisions by a particular department of government. *Bachman v Dep't of Treasury*, 215 Mich App 174, 182; 544 NW2d 733 (1996). We give great weight to the construction of a statute by the agency chosen to administer it. *Auto Club Ins Ass'n v Comm'r of Ins*, 144 Mich App 525, 530; 376 NW2d 150 (1985).

The Department of Treasury's reliance on Rule 205.87 for the definition of hospital is reasonable. The Legislature's failure to alter that definition when it amended the Use Tax Act reflects its acquiescence to that definition. We defer to the legislative intent and the department's construction of the term hospital. We therefore hold that Granger is entitled to an exemption under the contractor's exemption only if the nursing center satisfies the definition of a nonprofit hospital under Rule 205.87.

### III. APPLICATION OF "HOSPITAL" UNDER RULE 205.87

Petitioners next vigorously contend that the nursing center is a nonprofit hospital under Rule 205.87. We cannot agree. To qualify as a nonprofit hospital under Rule 205.87, the nursing center must: (1) be a separately organized institution or establishment; (2) have as its primary purpose the provision of medical, obstetrical, psychiatric, or surgical attention and nurs-

---

[7] Even accepting this argument, petitioners cannot prevail. The dictionary defines hospital as "an institution in which sick or injured persons are given medical or surgical treatment." *Random House Webster's College Dictionary* (1995), p 648. As will be discussed, the nursing center provides primarily nursing treatment and only limited medical treatment and minor surgical treatment.

ing; and (3) provide such services to persons requiring the same. Rule 205.87.

Regarding the nursing center's separate identity, the building that houses the nursing center is apart from the independent-living unit and the assisted-living unit. For accounting purposes, the nursing center's operating expenses are maintained independently from the other units. The nursing center has its own staff and its own budget. Although those facts support the conclusion that the nursing center is a separately organized establishment, the majority of facts prove otherwise.

In its application for tax-exempt status, Canterbury described the facility as one organization, not three separate units, and sought tax exemption for the single facility, not three separate units. The facility has one chief executive officer, not three. In its Articles of Incorporation, Canterbury-on-the-Lake describes itself as a continuing-care retirement center, not as three individual units. The facility has a common laundry room and a central kitchen. Enclosed corridors connect the three units to a fourth unit, the community center. The community center houses the examination rooms and the dental-care facility for the other three units. All three units receive hot water from the same source. Thus, the nursing center does not meet the separate identity criterion of Rule 205.87.

Additionally, the nursing center fails to meet the remaining requirements under Rule 205.87 that its *primary* purpose be to provide medical, obstetrical, psychiatric, or surgical attention and nursing to persons requiring such services. The nursing center does not provide services such as major surgery, labora-

tory support, or emergency care. The nursing center does not contain a pharmacy, an x-ray facility, an emergency room, or surgical operating rooms. Although staff performed minor surgical procedures in the patients' rooms, the nursing center was not equipped to handle major surgical procedures. Canterbury-on-the-Lake's administrator of health services admitted that the nursing center could not accommodate a patient who had broken a bone; instead, the staff would send the patient to a hospital. The nursing center does not provide those services typically offered by a hospital.[8] The nursing center's primary purpose is to provide nursing care, not hospital care.[9]

Petitioners argue that the Rule 205.87 definition requires that a hospital provide only "medical . . . attention and nursing." Even so, the nursing center's capacity to provide medical care is limited. The inclusion of the terms "obstetrical, psychiatric, or surgical" care implies that the Legislature intended a more complex definition of a hospital, one that the nursing center does not meet.

Also weighing against petitioners is the nursing center's licensure as a skilled nursing facility, not a hospital, by the Michigan Department of Health. Perhaps most telling is Canterbury's description of Canterbury-on-the-Lake as a home for the care of children or aged persons, and not as a hospital, in its

---

[8] In their appellate brief, petitioners have referred to the nursing center as a "hospital-type" facility and an "alternative" to a hospital.

[9] We concede that "in today's health care world, the lines between acute care hospitals and nursing homes have become increasingly blurred." *Tryc*, 451 Mich 137, 'n 8. Considering that tax exemptions are strictly construed, however, a blurred line is nonetheless a line. To eliminate the distinction between a nursing home and a hospital under the Use Tax Act is a task for the Legislature, not for this Court.

application for tax-exempt status. The record reflects more than a scintilla of evidence to support the tribunal's decision that the nursing center is not a hospital. *APCOA, supra.*

Affirmed.