SIETSEMA FARMS FEEDS, LLC v DEPARTMENT OF TREASURY

Docket No. 302033. Submitted February 14, 2012, at Lansing. Decided February 28, 2012. Approved for publication April 17, 2012, at 9:10 a.m.

Sietsema Farms Feeds, L.L.C., which operates a feed mill in which corn and other grains are dried, ground, and mixed with additives to produce animal feed that is sold to farms, petitioned in the Tax Tribunal with regard to an assessment by the Department of Treasury of use tax and interest following the department's rejection of petitioner's claim that certain equipment purchased by petitioner for use at its feed mill was exempt from the use tax under the agricultural-production exemption of the Use Tax Act, MCL 205.94(1)(f). The disputed equipment was used only at the feed mill and only to make feed to sell to other entities. The equipment was not used at the feed mill to feed livestock or poultry and petitioner did not go to farmers' properties and use the disputed equipment to feed their livestock or poultry. The Tax Tribunal agreed with respondent that petitioner did not use and consume the property in the "breeding, raising, or caring for livestock, poultry, or horticultural products" as required by the plain language of the agricultural-production exemption, but merely sold its feed to other entities that actually engaged in the qualifying activity. The Tax Tribunal ruled that petitioner's selling of feed to entities that were engaged in the qualifying activities did not vicariously extend the exemption to petitioner. After the Tax Tribunal sua sponte raised the issue whether petitioner was entitled to the industrial-processing exemption of the Use Tax Act, MCL 205.94o, and considered additional information submitted by the parties, the Tax Tribunal granted summary disposition in favor of respondent, concluding that petitioner was not entitled to either exemption. The Tax Tribunal then denied petitioner's motion for reconsideration. Petitioner appealed.

The Court of Appeals *held*:

1. The relevant language of MCL 205.94(1)(f) provides that petitioner must be a business enterprise and must be using and consuming the disputed property to feed livestock and poultry. The disputed property was used only at the feed mill and only to make

feed to sell to other entities. Petitioner did not use the disputed property to feed livestock and poultry. The Tax Tribunal properly held that petitioner was not entitled to the agricultural-production exemption.

2. Petitioner failed to offer on appeal any persuasive argument that the Tax Tribunal's decision denying an industrial-processing exemption under MCL 205.94o constituted an error of law or was unsupported by competent, material, and substantial evidence on the whole record. The Tax Tribunal's decision that petitioner was not entitled to the industrial-processing exemption is affirmed.

Affirmed.

TAXATION — USE TAX — AGRICULTURAL-PRODUCTION EXEMPTION.

Property sold to a person engaged in a business enterprise that then uses and consumes the property in the breeding, raising, or caring for livestock, poultry, or horticultural products is entitled to the agricultural-production exemption from use tax provided in the Use Tax Act; a person must be both engaged in a business enterprise and use and consume the property in the breeding, raising, or caring for livestock, poultry, or horticultural products to be entitled to the exemption (MCL 205.94[1][f]).

*The Novis Law Firm, PLLC* (by *James H. Novis*), for petitioner.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Michael R. Bell*, Assistant Attorney General, for respondent.

Before: HOEKSTRA, P.J., and CAVANAGH and BORRELLO, JJ.

PER CURIAM. Petitioner, Sietsema Farms Feeds, L.L.C., appeals as of right the Michigan Tax Tribunal's order granting summary disposition in favor of respondent, Michigan Department of Treasury, rejecting petitioner's claim that certain purchased property was exempt from the use tax and affirming respondent's assessment. We affirm.

Petitioner operates a feed mill in which corn and other grains are dried, ground, and mixed with additives to produce animal feed that is sold to hog and turkey farms owned in part or in whole by the Sietsema family and entities affiliated with petitioner. Following a use tax audit, respondent determined that certain equipment purchased by petitioner for use at the feed mill was not exempt under the agricultural-production exemption. The equipment included truck scales, storage/processing tanks, storage tank inventory-monitoring equipment, a liquid-storage tank, and a personnel elevator.

After petitioner was issued a notice of intent to assess, petitioner sought an informal conference, following which an assessment of $19,965.11, plus interest, was upheld. Petitioner then appealed the final assessment in the Michigan Tax Tribunal. After the submission of a joint stipulation of facts, cross-motions for summary disposition pursuant to MCR 2.116(C)(10) were filed. Petitioner argued that it was entitled to the agricultural-production exemption provided in the Michigan Use Tax Act, MCL 205.94(1)(f), because the two requirements of the statute were met: (1) it was a business enterprise and (2) the property was used or consumed in agricultural production because it processed feed for hogs and turkeys. Respondent argued, however, that petitioner did not use the equipment in an agricultural-production activity. That is, petitioner did not use and consume the property in the "breeding, raising, or caring for livestock, poultry, or horticultural products," as required by the plain language of the agricultural-production exemption. Petitioner merely sold its feed to other entities actually engaged in the qualifying activity.

The Tax Tribunal agreed with respondent, holding that, although petitioner was engaged in a business enter-

prise, petitioner was not "using and consuming the property . . . in the breeding, raising, or caring for livestock, poultry, or horticultural products . . . ." MCL 205.94(1)(f). Petitioner's selling of feed to entities that were engaged in the qualifying activities did not "vicariously" extend the exemption to petitioner. Simply stated, petitioner did not use the disputed property to feed animals. The Tax Tribunal noted that, according to petitioner's argument, manufacturers of pharmaceuticals for farm animals or providers of veterinary services would also be entitled to the agricultural-production exemption simply because they engage in activities that support agriculture. At oral argument on the cross-motions, although not argued by petitioner, the Tax Tribunal raised the issue whether petitioner was entitled to the industrial-processing exemption, MCL 205.94$o$, and requested further information. After review of the additional information submitted by the parties, the Tax Tribunal held that petitioner failed to establish entitlement to the industrial-processing exemption. Accordingly, the Tax Tribunal concluded that petitioner was not entitled to either the agricultural-production or industrial-processing exemptions; thus, the assessment was affirmed and respondent's motion for summary disposition was granted. After petitioner's motion for reconsideration was denied, this appeal followed.

Petitioner first argues that the Tax Tribunal erroneously concluded that it did not qualify for the agricultural-production exemption, MCL 205.94(1)(f), because both statutory criteria were met—it was engaged in a business enterprise and the contested property was used and consumed in raising or caring for (feeding) livestock or poultry. We disagree.

The Tax Tribunal's determination of a motion for summary disposition is reviewed de novo. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 141;

783 NW2d 133 (2010). "In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011) (quotation marks and citation omitted).

Generally, the Michigan Use Tax Act, MCL 205.91 *et seq.*, imposes a tax "for the privilege of using, storing, or consuming tangible personal property . . . ." MCL 205.93(1). However, the act sets forth exemptions to the use tax. In general, tax exemptions are strictly construed in favor of the taxing authority. *Canterbury Health Care, Inc v Dep't of Treasury*, 220 Mich App 23, 31; 558 NW2d 444 (1996). But ambiguities are to be resolved in favor of the taxpayer. *Czars, Inc v Dep't of Treasury*, 233 Mich App 632, 637; 593 NW2d 209 (1999).

At issue here is the agricultural-production exemption, MCL 205.94(1)(f), which exempts from use tax "[p]roperty sold to a person engaged in a business enterprise and using and consuming the property in the tilling, planting, caring for, or harvesting of the things of the soil or in the breeding, raising, or caring for livestock, poultry, or horticultural products . . . ." MCL 205.94(1)(f).

The primary goal of statutory interpretation is to determine the intent of the Legislature as discerned from the statutory language and give effect to that intent. *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 665-666; 649 NW2d 760 (2002). Where a statute is clear and unambiguous, judicial construction is neither appropriate nor permitted, and the statutory language must be read according to its ordinary mean-

ing. *Id*. at 666. Nothing may be read into a clear statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Paris Meadows*, 287 Mich App at 141 (quotation marks and citation omitted). And, in construing a statute, the court should presume that every word has some meaning, avoiding a construction that would render any part of a statute surplusage or nugatory. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

Here, the parties stipulated that petitioner was engaged in a business enterprise. However, as denoted by the conjunctive term "and" between the two statutory conditions, petitioner must also have been "using and consuming the property . . . in the breeding, raising, or caring for livestock, poultry, or horticultural products . . . ." Petitioner argues that this second requirement was met because the property was "used to produce livestock and poultry feed, a necessary part of raising the swine and turkeys that eat the feed." But petitioner's interpretation fails to account for important statutory terms; in particular, that petitioner be engaged in a business enterprise "*and* using and consuming the property . . . in the breeding, raising, or caring for" livestock and poultry. (Emphasis supplied). So, here, petitioner must be using and consuming the disputed property to feed livestock and poultry.

Petitioner supports its claim by citing the case of *William Mueller & Sons, Inc v Dep't of Treasury*, 189 Mich App 570; 473 NW2d 783 (1991). In that case, the petitioner was assessed a use tax on fertilizer equipment that it claimed was involved in agricultural production. *Id*. at 571. This Court noted that, in the petitioner's business, it purchased and used fertilizer-application equipment "for a contractual service to

farmers for the application of fertilizer . . . ." *Id.* At issue in that case was the provision of MCL 205.94(1)(f) that provides that the exemption is applicable to "[p]roperty sold to a person engaged in a business enterprise and using and consuming the property in the tilling, planting, caring for, or harvesting of the things of the soil . . . ." *Id.* at 572. This Court held that the petitioner qualified for the exemption because it was undisputed that the "petitioner is a business enterprise and that the fertilizing equipment is used in the tilling, planting, caring for, or harvesting of things of the soil." *Id.* at 573. The petitioner used the disputed property to apply fertilizer to farmland. This Court rejected the respondent's argument that the taxpayer had to be "in the business of producing agricultural products in order for [MCL 205.94(1)(f)] to apply," and concluded that the exemption "does not require that the taxpayer be engaged in the actual production of horticultural or agricultural products." *Id.* at 573-574.

The facts in our case, however, are distinguishable from those in *Mueller.* Here, the disputed equipment was used only at the feed mill and only to make feed to sell to other entities. Petitioner did not use the disputed property to feed livestock and poultry. And petitioner was not going to farmers' properties and using the property to feed their livestock and poultry. Petitioner was engaged in a business enterprise, but petitioner was not "*using and consuming* the property . . . in the breeding, raising, or caring for livestock, poultry, or horticultural products . . . ." MCL 205.94(1)(f) (emphasis supplied). In *Mueller*, the petitioner was using the disputed equipment to provide fertilizing services to farmers. That is, the petitioner was engaged in a business enterprise *and* the petitioner was "using and consuming the property in the tilling, planting, caring for, or harvesting of the things of the soil," although it

was not the petitioner's soil and the resulting products were not the petitioner's products. Thus, here, the holding in *Mueller* would apply to support petitioner's exemption claim only if petitioner was using and consuming the property to actually feed livestock and poultry—even if not petitioner's animals—which petitioner did not do.

Petitioner also supports its argument by citing the case of *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486; 618 NW2d 917 (2000). In that case, the petitioner marketed milk for dairy farmers and was assessed a use tax for machinery, equipment, and supplies it used to test raw milk. *Id.* at 487-488. It was undisputed that "milk production" was within the scope of the agricultural-production exemption. *Id.* at 493. The issue, however, was whether the testing equipment was used by petitioner for producing the milk (and thus eligible for the exemption) or for marketing the milk (and thus not eligible for the exemption). *Id.* at 494. This Court noted that the law required that milk be tested before it could be sold commercially and that the petitioner's testing "establishes the identity and confirms the safety of the raw milk produced on the farm." *Id.* Thus, this Court concluded, the petitioner's use of its equipment to test milk before it could be marketed was part of the process of producing milk and that equipment was exempt from the use tax. *Id.* at 495. The respondent's argument that the petitioner had to be an agricultural producer, i.e., a milk producer, was rejected. *Id.* The petitioner was using the disputed property to produce milk, even though it was not the petitioner's milk.

The facts in our case, however, are also distinguishable from those of *Mich Milk Producers*. Here, petitioner's equipment was used by petitioner to make feed to

sell to other entities. There is no contention that feed production is equated with "agricultural production," but that fact is not dispositive because this Court has held that a business entity need not actually be an agricultural producer. Petitioner contends that "the mixing of grain to be fed to farm animals [is] a direct part (necessary component) of the raising, or caring for livestock, poultry, or horticultural products." But petitioner was not using the disputed property to actually feed the animals. That is, petitioner was not "*using and consuming* the property . . . in the breeding, raising, or caring for livestock, poultry, or horticultural products . . . ." MCL 205.94(1)(f) (emphasis supplied). The petitioner in *Mich Milk Producers* was "using and consuming" the property to test milk during the production process, although in the provision of services to another entity. Thus, the holding in *Mich Milk Producers* would apply to support petitioner's exemption claim only if petitioner was using and consuming the equipment to actually feed livestock and poultry—even if not petitioner's animals—which petitioner did not do.

Accordingly, we conclude that the Tax Tribunal properly interpreted the plain language of MCL 205.94(1)(f) and held that petitioner was not entitled to the agricultural-production exemption. Petitioner was not using and consuming the truck scales, storage/processing tanks, storage tank inventory-monitoring equipment, liquid-storage tank, and personnel elevator to feed livestock and poultry. Thus, the Tax Tribunal's decision to grant respondent's motion for summary disposition in this regard is affirmed.

Next, petitioner appears to argue that the Tax Tribunal erroneously concluded that it did not qualify for the industrial-processing exemption, MCL 205.94*o*. However, in its brief on appeal petitioner provides very little detail

or argument with regard to this issue, only briefly claiming that the issue was not properly adjudicated because petitioner was not given an effective opportunity to address it. Then petitioner continues its argument related to the agricultural-production exemption.

But petitioner only averred in its petition that the disputed property was exempt under the agricultural-processing exemption and did not assert an alternative claim that the property was also exempt under the industrial-processing exemption. Petitioner's motion for summary disposition also did not address the issue whether its property was exempt under the industrial-processing exemption. The Tax Tribunal initiated the discussion at the motion hearing regarding whether some of the property may qualify for the industrial-processing exemption and requested additional information in that regard, which petitioner provided. Thereafter, the Tax Tribunal determined that the disputed property did not qualify for the industrial-processing exemption. And petitioner did not challenge that decision in its motion for reconsideration. Accordingly, petitioner had the opportunity to address and argue this issue that was raised sua sponte by the Tax Tribunal. And on appeal petitioner has failed to offer any persuasive argument that the Tax Tribunal's decision denying an industrial-processing exemption constituted an error of law or was unsupported by competent, material, and substantial evidence on the whole record. Thus, we also affirm the Tax Tribunal's decision that petitioner was not entitled to the industrial-processing exemption with regard to the disputed property.

Affirmed.

Hoekstra, P.J., and Cavanagh and Borrello, JJ., concurred.