*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

TRUGREEN LIMITED PARTNERSHIP,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

FOR PUBLICATION
April 10, 2020
9:00 a.m.

No. 344142
Court of Claims
LC No. 17-000141-MT

---

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

GLEICHER, J.

Michigan's use tax exempts property consumed in the tilling, planting, caring for or harvesting things of the soil, or in the breeding, raising or caring of livestock, poultry or horticultural products for further growth. These words conjure images of our state's bean fields, dairy farms, and cherry orchards. The question presented is whether the Legislature intended that a lawn care company would reap the fruits of this exemption. The statutory vocabulary describes a tax subsidy aimed at growing Michigan's agricultural economy, not ornamental grass and shrubs. The Court of Claims reached the same conclusion. We affirm.

I

The history of the statute at issue dates back to 1935, when the Legislature first exempted from "sale at retail" under the General Sales Tax Act "any transaction . . . of tangible personal property . . . for consumption or use in industrial processing or agricultural producing." 129 CL 3663-1(b.1), as amended by 1935 PA 77. Two years later, the Legislature exempted the same transactions from the use tax. 1929 CL 3663-44(g), as amended by 1937 PA 94.

Between 1937 and 2012 the Legislature revised the use tax language several times. For more information regarding the amendments, see this link to the Legislature's website: http://bit.ly/2Rc7zG5. The version of the statute in effect during the tax years relevant here exempts from the use tax:

-1-

> *Property sold to a person engaged in a business enterprise and using and consuming the property in the tilling, planting, caring for, or harvesting of the things of the soil or in the breeding, raising, or caring for livestock, poultry, or horticultural products, including transfers of livestock, poultry, or horticultural products for further growth.* This exemption includes machinery that is capable of simultaneously harvesting grain or other crops and biomass and machinery used for the purpose of harvesting biomass. This exemption includes agricultural land tile, which means fired clay or perforated plastic tubing used as part of a subsurface drainage system for land used in the production of agricultural products as a business enterprise and includes a portable grain bin, which means a structure that is used or is to be used to shelter grain and that is designed to be disassembled without significant damage to its component parts. This exemption does not include transfers of food, fuel, clothing, or similar tangible personal property for personal living or human consumption. This exemption does not include tangible personal property permanently affixed to and becoming a structural part of real estate. As used in this subdivision, "biomass" means crop residue used to produce energy or agricultural crops grown specifically for the production of energy. [MCL 205.94(1)(f), as amended by 2012 PA 474 (emphasis added).[1]]

Our task is to determine whether the italicized language applies to TruGreen.

TruGreen offers its customers lawn and ornamental plant care services. An affidavit submitted by TruGreen's director of technical operations describes that TruGreen's business is built around seasonal or annual service subscriptions entered into by residential homeowners and commercial, institutional and private landowners. For a set fee, the company cares for grass, trees, and shrubbery at a variety of locations in addition to homes, including school grounds, parks, athletic fields, business parks, malls, airports, roadways and pastures not used for agricultural production. TruGreen utilizes fertilizers, herbicides, and insecticides to care for its customers' turfs and ornamental plants, providing nutrients, controlling weeds, and preventing insects. Sometimes TruGreen must "amend" the soil after testing it by adding additional ingredients (such as lime, sulfur, gypsum, or iron) to enhance the health of grass, trees, or shrubs. It also aerates lawns and adds additional seed to remedy bare spots. TruGreen does not offer services to nurseries, tree or nut farms, or individuals or entities engaged in fruit or vegetable production. The affidavit elucidates: "Our branch location business licenses are specific to turf and ornamental plant care only."

In November 2015, TruGreen requested a use tax refund in the amount of $4,745.39 for the fertilizer, grass seed, and other products it used in its commercial lawn care business during a 31-day period in 2012. The Department of Treasury denied the refund claim and TruGreen requested an informal conference. Before the conference could be held, TruGreen submitted

---

[1] A different version of the statute applied to part of the 2012 tax year, but the operative language in the first sentence remained the same.

another use tax refund claim for a longer period (four and a half years) in the amount of $1,168,333.49.

A referee concluded that TruGreen had established its eligibility for the exemption and was entitled to a refund. The referee reasoned that "there are only two requirements for this exemption, (1) that a person be engaged in a business enterprise, and (2) the tangible personal property be used and consumed in the . . . planting [or] caring for . . . things of the soil." In 2004, the referee noted, the Legislature removed language from the statute requiring that an entity be engaged in "agricultural production."[2] The referee concluded, "Petitioner is engaged in a business enterprise (servicing lawns) and used and consumed the tangible personal property purchased (grass seed and fertilizer) in the planting and caring for of [sic] things of the soil. As such, the grass seed and fertilizer it purchased meets the two requirements set forth in [MCL 205.94(1)(f)] for exemption from use tax in Michigan."

The department issued a "Decision and Order of Determination" denying the refund claim, reasoning that "the statute and administrative rules requiring tangible personal property to be used within agricultural production remained valid notwithstanding [the 2004] amendment." According to the department, caselaw following the amendment continued to construe the exemption as implicating "agricultural production." "In giving proper meaning to the undefined phrase 'things of the soil,'" the department advocated, "it is important to consider that Michigan follows the doctrine 'that a word or phrase is given meaning by the context of its setting . . . .'" The other words in the statutory "setting" support that the Legislature envisioned that "things of the soil" meant growing, cultivating, or extracting crops or comparable things.

TruGreen appealed in the Court of Claims, where the parties filed cross-motions for summary disposition. TruGreen raised two arguments in support of its eligibility for the exemption. First, TruGreen contended, its activities satisfy the plain language of the statute, as the company is engaged in "tilling, planting . . . [and] caring for . . . things of the soil." Second, TruGreen argues that this Court's opinion in *William Mueller & Sons, Inc v Dep't of Treasury*, 189 Mich App 570, 571; 473 NW2d 783 (1991), compels the same conclusion, asserting that it stands for the proposition "that agricultural production is not required by the statute."

The Court of Claims rejected both arguments, ruling that the statute required the claimant to create or contribute to an agricultural or horticultural product. Citing several of this Court's cases interpreting MCL 205.94(1)(f), the Court of Claims observed that all "support the conclusion that production of horticultural or agricultural products *is* necessary." (Emphasis in original.) The

---

[2] The 2004 amendment eliminated two sentences from the statute: "At the time of the transfer of that tangible personal property, the transferee shall sign a statement, in a form approved by the department, stating that the property is to be used or consumed in connection with the production of horticultural or agricultural products as a business enterprise. The statement shall be accepted by the courts as prima facie evidence of the exemption." MCL 205.94(1)(f), as amended by 2004 PA 172. We discuss this amendment later in the opinion.

-3-

Court of Claims denied TruGreen's motion for reconsideration and TruGreen now appeals as of right.

II

Because this case presents a purely legal question, our review is de novo. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 369; 803 NW2d 698 (2010). A few tax principles, combined with a couple of interpretive precepts, inform our thinking.

"Tax exemptions are the antithesis of tax equality" and therefore must be "strictly construed," generally "in favor of the taxing authority." *Canterbury Health Care, Inc v Dep't of Treasury*, 220 Mich App 23, 31; 558 NW2d 444 (1996). Justice COOLEY explained the underlying rationale for considering tax exemptions cautiously and conservatively as follows:

> "Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt. In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the State has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant." [*Detroit v Detroit Commercial College*, 322 Mich 142, 149; 33 NW2d 737 (1948), quoting 2 Cooley, Taxation (4th ed), § 672, p 1403.]

Thus, TruGreen bears a heavy burden. It must demonstrate that the Legislature had the economic interests of lawn care companies in mind when it enacted the exemption, MCL 205.94(1)(f). "Implications" and "inferences" do not suffice.[3]

---

[3] The dissent takes issue with Justice COOLEY's approach to the construction of tax exemptions, preferring the views expressed in Scalia & Garner, *Reading Law: The Interpreting of Legal Texts* (St. Paul: Thomson/West, 2012). The quote "cannot be taken at face value," the dissent maintains, as a "reasonable doubt" standard of proof could not possibly apply in this civil case. True enough, and likely the dissent correctly pegs that aspect of the quote as a "rhetorical flourish." But "rhetorical flourish" or not, our Supreme Court put its thumb on Justice COOLEY's side of the scale in 1948 in *Detroit v Detroit Commercial College*, 322 Mich 142, 149; 33 NW2d 737 (1948), and kept it there as recently as 1980 in *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 754; 298 NW2d 422 (1980) ("Justice COOLEY best summarized the rule of law in his treatise on taxation[.]"). As Scalia and Garner point out, *Reading Law* at 359, the United States Supreme Court has set out the same principles as recently as 2011 in *Mayo Foundation for Med Ed & Research v United States*, 562 US 44, 59-60; 131 S Ct 704; 178 L Ed 2d 588 (2011) ("[W]e have

-4-

Against this legal backdrop, we turn to the words. The exemption applies to:

> Property sold to a person engaged in a business enterprise and using and consuming the property in the tilling, planting, caring for, or harvesting of the things of the soil or in the breeding, raising, or caring for livestock, poultry, or horticultural products, including transfers of livestock, poultry, or horticultural products for further growth. . . . [MCL 205.94(1)(f), as amended by 2012 PA 474.]

TruGreen contends that that because it "plants" grass and is engaged in "caring for things of the soil," it is excused from paying use taxes on the fertilizer, insecticides, and myriad other products it consumes to keep customers' lawns green and healthy. Employing a purely textual approach, TruGreen urges that its activities fall within the realm of "horticulture" and "caring for" soil. The analysis is simple, TruGreen insists. Because it uses and consumes tangible personal property to "plant" and "care for" grass, trees and shrubs—indisputably things of the soil—it is plainly and unambiguously entitled to the use tax exemption.

Often, "[w]hat is 'plain and unambiguous' . . . depends on one's frame of reference." *Shiffer v Bd of Ed of Gibraltar Sch Dist*, 393 Mich 190, 194; 224 NW2d 255 (1974). Were we to consider the words and phrases cherry-picked by TruGreen in isolation from the rest of the text, we might agree that TruGreen should prevail. TruGreen's proposed interpretive methodology, however, reduces the statute's meaning to a couple of selectively harvested words, and buries the balance of the text. This approach risks an interpretation in tension with the whole text's most logical and natural meaning. Rather than plucking words from the statute, we focus on the whole textual landscape. We endeavor to harmonize *all* the words, thereby cultivating a coherent reading that promotes the Legislature's goals while maintaining fidelity to underlying legal principles. Here, those principles counsel in favor of a narrow reading of the exemption, rooted in the rationale for relieving certain entities from the burden of paying the tax.

"[T]he meaning of statutory language, plain or not, depends on context." *King v St Vincent's Hosp*, 502 US 215, 221; 112 S Ct 570; 116 L Ed 2d 578 (1991). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *Id.* (cleaned up).[4] This focus on the big picture echoes a primary canon of

---

instructed that 'exemptions from taxation are to be construed narrowly[.]' "). And our Supreme Court has oft repeated that statutory exceptions to governmental immunity are to be "narrowly construed," *Nawrocki v Macomb Co Rd Comm'n*, 463 Mich 143, 158; 615 NW2d 702 (2000), another "rule" that is entirely judge-made. But see Justice VIVIANO's concurring opinion in *Schaub as Next Friend of Schaub v Seyler*, 504 Mich 987; 934 NW2d 46, 49 (2019), which seems to call into question the application of such rules.

[4] This opinion uses the parenthetical "cleaned up" to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

construction: the individual, discrete words of a statute must be read holistically "with a view to their place in the overall statutory scheme." *Davis v Mich Dep't of Treasury*, 489 US 803, 809; 109 S Ct 1500; 103 L Ed 2d 891 (1989); see also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 167 ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."); *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 367-368; 917 NW2d 603 (2018) ("However, we do not read statutory language in isolation and must construe its meaning in light of the context of its use.").[5]

The exemption's first relevant sentence is a string of participles: tilling, planting, caring for, harvesting, breeding, and raising. The words describe actions respecting "things of the soil" or "livestock, poultry or horticultural products." They are located in a statute creating an exemption from taxation, which we must strictly construe. Although grass and trees are "things of the soil," that phrase is surrounded by words describing activities that take place on farms. A "fundamental principle of statutory construction (and, indeed, of language itself) [is] that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v United States*, 508 US 129, 132; 113 S Ct 1993; 124 L Ed 2d 44 (1993). TruGreen plants grass and cares for it. But the grass it plants and tends is decorative, and the work it does is unrelated to crop cultivation or agriculture in general. Considered within its contextual milieu, the term "things of the soil" pertains to the products of farms and horticultural businesses, not blades of well-tended grass.[6]

Independent of the rest of the statute, the terms "caring for" and "planting" could apply to TruGreen's lawn care enterprise, and the vivisectionist model of statutory interpretation supports that result. Our Supreme Court has applied such an approach, we acknowledge, in cases such as *Robinson v Detroit*, 462 Mich 439, 461-462; 613 NW2d 307 (2000) (relying on a dictionary definition of the word "the"), and *Nawrocki v Macomb Co Rd Comm'n*, 463 Mich 143, 160; 615 NW2d 702 (2000) (examining the four sentences of a single statutory subsection separately and

---

[5] Like TruGreen, the dissent champions a purely textual approach, emphasizing that "things of the soil" means "things" (grass is a "thing") that come from the "soil" (grass comes from the soil). True enough—no one disputes that grass is a "thing of the soil." But the meaning of a phrase also depends on how its constituent parts are joined and interact. Sometimes "things of the soil" do not grow from the soil at all. See 1 *The Schocken Bible: The Five Books of Moses* (Random House 2000), Genesis 1:25 ("God made the wildlife of the earth after their kind, and the herd-animals after their kind, and all crawling things of the soil after their kind.").

[6] TruGreen's interpretation would extend the use tax exemption to every lawn care and tree service company doing business in Michigan. And consistent with TruGreen's interpretation of "things of the soil," those businesses would be eligible for a *sales* tax exemption on lawn and garden-related purchases, as Michigan's sales tax includes the same exemption. See MCL 205.54a(1)(e) (stating that "a sale of tangible personal property to a person engaged in a business enterprise that uses or consumes the tangible personal property, directly or indirectly, for either the tilling, planting, draining, caring for, maintaining, or harvesting of things of the soil or the breeding, raising, or caring for livestock, poultry, or horticultural products" is exempt from sales tax).

-6-

independently to discern their meaning). Nevertheless, the "context is king" method we employ today has a long and healthy pedigree. For example, the United States Supreme Court has explained that "[i]n determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v United States*, 494 US 152, 156; 110 S Ct 997; 108 L Ed 2d 132 (1990). The Michigan Supreme Court has frequently followed the same interpretive pathway, counseling that words "must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute, construed in the light of history and common sense." *Arrowhead Dev Co v Livingston Co Rd Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982). More recently, in *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) (cleaned up), the Supreme Court highlighted that the statutory language at issue in that case did not "stand alone" and "should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the act as a whole." Our Supreme Court continued, "Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context," which requires interpreting courts to refrain from "divorc[ing]" "words and clauses . . . from those which precede and those which follow." *Id*. (cleaned up). "[W]ords grouped in a list should be given related meaning." *Id*. (cleaned up).

The words closely adjoining "planting" and "caring for things of the soil" are: "tilling," "harvesting of things of the soil," "breeding," "raising," "caring for livestock, poultry, or horticultural products," and "the transfers of livestock, poultry, or horticultural products for further growth." This collection of words and phrases logically connotes that the use tax exemption incentivizes investment in the agricultural realm.[7] Farmers "till," "plant," "care for" and "harvest" things of the soil; they also "care for" animals. Several sentences that followed these, then located in the same statutory subsection, reinforce that the Legislature intended the exemption to apply to agricultural activities.[8] The second sentence of MCL 205.94(1)(f), as amended by 2012 PA 474, stated that the "exemption includes machinery that is capable of simultaneously harvesting grain or other crops and biomass and machinery used for the purpose of harvesting biomass."[9] The third sentence further provided that the "exemption includes agricultural land tile, which means fired clay or perforated plastic tubing used as part of a subsurface drainage system for land used in the production of agricultural products as a business enterprise and includes a portable grain bin . . . ." Read as a cohesive whole, MCL 205.94(1) was and is intended to benefit businesses that contribute to our state's agricultural sector.

---

[7] Promoting agricultural investment benefits Michigan's economy and helps put local food on our tables. Lawns, on the other hand, demand fertilizer, water, energy, and land. The exemption from taxation at issue encourages the *production* of market resources, not their consumption.

[8] The remaining sentences of MCL 205.94(1)(f), as amended by 2012 PA 474, have since been moved to other subsections of the statute.

[9] The subsection defined "biomass" as "crop residue used to produce energy or agricultural crops grown specifically for the production of energy." MCL 205.94(1)(f), as amended by 2012 PA 474.

## III

We are not the first judges to conclude that MCL 205.94(1) applies to businesses associated with agriculture. The caselaw has consistently referred to the statutory subsection at issue as the "agricultural-production exemption." See *Detroit Edison Co v Dep't of Treasury*, 498 Mich 28, 50 n 14; 869 NW2d 810 (2015); *Sietsema Farms Feeds, LLC v Dep't of Treasury*, 296 Mich App 232, 235; 818 NW2d 489 (2012); *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 488; 618 NW2d 917 (2000); *Kappen Tree Service, LLC v Dep't of Treasury*, unpublished opinion of the Court of Appeals, issued April 26, 2016 (Docket No 325984), slip op at 3.

*William Mueller & Sons*, 189 Mich App 570, is instructive. In that case, we held the exemption applicable to Mueller & Sons' purchase of fertilizer equipment. Mueller & Sons was "in the business of testing farm soil, recommending fertilizer mixes, and selling seed and fertilizer to farmers." *Id*. at 571. The company also purchased produce from farmers, and both used fertilization-application equipment and offered it for rent to farmers. *Id*. This Court rebuffed the department's argument that to qualify for the exemption the taxpayer had to *directly* produce agricultural products, and instead explained that "[s]ection 4(f), by its plain language, exempts property sold to a business enterprise if the property is used for agricultural or horticultural growth." *Id*. at 573. The taxpayer itself need not engage "in the business of producing agricultural products[.]" *Id*. at 573-574. The touchstone, we highlighted, was involvement in an agricultural endeavor. *Id*. at 574.

TruGreen asserts that *Mueller* is inapposite, as the statute in effect at that time included the following two sentences:

> [A]t the time of the transfer of that tangible personal property, the transferee shall sign a statement, in a form approved by the department, stating that the property is to be used or consumed in connection with the production of horticultural or agricultural products as a business enterprise. The statement shall be accepted by the courts as prima facie evidence of the exemption. [MCL 205.94(f), as amended by 1978 PA 262.]

In 2004, the Legislature eliminated this signed-statement requirement. 2004 PA 172. The elimination of statutory language sometimes supplies an indicator of legislative intent. *Sam v Balardo*, 411 Mich 405, 430; 308 NW2d 142 (1981). Here, however, all that was removed was a certification requirement. The Court of Claims noted that this amendment was part of a larger legislative plan to adopt the Streamlined Sales and Use Tax Administration Act, MCL 205.801 *et seq*. The seller now bears the burden of identifying the ground for an exemption, not the purchaser. See MCL 205.104b(1). This administrative change did not alter the design, structure, purpose or meaning of the rest of the statute.

-8-

MCL 205.94(1) permits a tax exemption for property used in agricultural production and supply. TruGreen is not involved in any agricultural endeavors. Applying an organic approach to *all* the statutory words, we affirm the Court of Claims.


/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro