TUINIER v BEDFORD CHARTER TOWNSHIP

Docket No. 211473. Submitted May 11, 1999, at Grand Rapids. Decided June 1, 1999, at 9:00 A.M. Leave to appeal sought.

Edward J. Tuinier filed a petition in the Michigan Tax Tribunal to challenge a determination by Bedford Charter Township that polyethylene greenhouses on realty owned by the petitioner were taxable real property. The petitioner contended that the greenhouses were personal property and were exempt from taxation under MCL 211.9(j); MSA 7.9(j) as personal property used in an agricultural operation and exempt from taxation under MCL 211.7bb; MSA 7.7(4y) as nursery stock seasonal protection units. The Tax Tribunal decided that the greenhouses were not nursery stock seasonal protection units, but that they were personal, not real, property and exempt from taxation by virtue of their use in an agricultural operation. The township appealed.

The Court of Appeals *held*:

1. The Tax Tribunal erred as a matter of law in concluding that the greenhouses were personal property rather than real property. The greenhouses are taxable real property because they were annexed to the real estate, were adapted to the use of the realty as a commercial nursery, and were intended by their owner to be permanent accessions to the real estate.

2. The Tax Tribunal correctly concluded that the greenhouses were not tax-exempt nursery stock seasonal protection units. MCL 211.7bb(2)(a); MSA 7.7(4y)(2)(a) provides that a structure must be covered by nonreusable plastic sheeting for less than thirty-four weeks a year in order to qualify as a nursery stock seasonal protection unit. The greenhouses in this case have remained in place for several years, far in excess of the statutory limit of thirty-four weeks a year.

Reversed and remanded.

TAXATION — REAL PROPERTY — PERSONAL PROPERTY.

Whether property situated on real estate qualifies as personal or real for purposes of taxation is determined by whether the property is actually or constructively annexed to the real estate, whether the property is adapted or applied to the use or purpose of that part of the realty to which the property is connected or appropriated, and

whether the property owner intended to make the property a permanent accession to the realty.

*Dykema Gossett PLLC* (by *Stewart L. Mandell* and *Kathleen McCree Lewis*), for Edward J. Tuinier.

*James D. Norlander*, for Bedford Charter Township.

Amicus Curiae:

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *Kenneth C. Sparks* and *Roxanne C. Seeber*), for Michigan Townships Association.

Before: SAWYER, P.J., and MURPHY and TALBOT, JJ.

MURPHY, J. Petitioner Edward Tuinier owns certain property in Bedford Charter Township, consisting of both glass and polyethylene plant growth chambers commonly referred to as greenhouses. In 1995, the property known as "Post Gardens," included seven glass greenhouses, nine polyethylene covered greenhouses, an office, two pole barns, and a shed. Petitioner is the president of Post Gardens, Inc., and Post Gardens of Battle Creek, which are engaged in the business of ornamental horticulture, growing potted material, including annuals, seedlings, holiday plants, and bulb plants. All of the structures are on a single parcel, identified as Tax I.D. No. 13-04-480-033-000.

Petitioner filed his petition objecting to the 1994 property tax assessment, contending that the polyethylene greenhouses were exempt from property taxation as either agricultural property, pursuant to MCL 211.9(j); MSA 7.9(j), or as a nursery stock seasonal protection unit, pursuant to MCL 211.7bb;   MSA 7.7(4y). Petitioner subsequently filed an amended

petition to include an objection to the 1995 assessment of the property. Before trial, the parties stipulated to narrow the dispute in the case to whether the polyethylene greenhouses were exempt from property taxes.

On September 16, 1996, a hearing was conducted before the Michigan Tax Tribunal. The evidence presented at the hearing established that petitioner's property has eight polyethylene greenhouses and one long polyethylene structure referred to as the "400 poly structure." The three largest polyethylene greenhouses are over two-hundred feet long and contain as many as forty-eight "bays," with each bay separated by a gutter on the roof. The polyethylene greenhouses are constructed in the following manner. First, the greenhouses are anchored to the ground by twenty-inch metal "stubs," which are placed in holes having a diameter of about twelve inches and a depth of twenty-four to thirty-six inches. The holes are then filled with concrete, and a nine- to ten-foot-high post is bolted to the "stub." Next, the gutter assembly that runs the length of the greenhouse bay is bolted to the posts. Then, aluminum "roofbows" or "hoops" are bolted to the vertical posts and serve to support the roof. Finally, the polyethylene greenhouses are covered with two layers of plastic. There is no foundation for the greenhouses except the stubs; however, there are ten-foot-wide cement sidewalks inside the greenhouses. The cement sidewalks are one-half to three inches thick and poured directly on the dirt without reinforcement.

The greenhouses are supplied with water, natural gas, and electricity. The water source is a 1-1/2 to

2-inch pipe hung by a chain at gutter level. The plants are watered by workers who use garden hoses attached to the water supply. The polyethylene greenhouses are heated by "portable" natural gas heaters, which are three to four feet tall and 2-1/2 feet wide. The heaters are clamped to a support post and fueled by a two-inch natural gas pipe that runs into the greenhouses. The electric wires run above ground in pipes. It takes fifteen minutes to remove the gas and electric service from the polyethylene greenhouses. Finally, the polyethylene greenhouses have four-foot-tall "portable" fans mounted on the sides of greenhouses to cool the plants. Although petitioner presented evidence that the polyethylene greenhouses can be dismantled in a relatively short period, petitioner's evidence was not specific regarding how much time the disassembly would require.

Following the hearing, the Tax Tribunal entered its written opinion rejecting petitioner's contention that the polyethylene greenhouses were exempt from real estate taxes as "nursery stock seasonal protection units" pursuant to MCL 211.7bb; MSA 7.7(4y). However, the tribunal agreed with petitioner's contention that the polyethylene greenhouses were tax exempt personal property pursuant to MCL 211.9(j); MSA 7.9(j).

Respondent appeals as of right and is joined by amicus curiae Michigan Townships Association. We reverse and remand.

Absent fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal adopted a wrong principle of law or erred as a matter of law. Const 1963, art 6, § 28; *Edward Rose Bldg Co v Independence Twp*, 436 Mich 620, 631-632;

462 NW2d 325 (1990). The tribunal's factual findings are upheld unless they are not supported by competent, material, and substantial evidence, while the tribunal's failure to base its decision on such evidence is an error of law requiring reversal. *Georgetown Place Cooperative v City of Taylor*, 226 Mich App 33, 43; 572 NW2d 232 (1997). Because respondent does not allege fraud, this Court's review is limited to whether the tribunal adopted a wrong principle of law or erred as a matter of law.

· Section 1 of the general property tax act (GPTA), MCL 211.1 *et seq.*; MSA 7.1 *et seq.*, provides "[t]hat all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1; MSA 7.1. Section 2 of the GPTA provides in relevant part that "[f]or the purpose of taxation, real property includes all lands within the state, all buildings and fixtures on the land and appurtenances thereto, except as expressly exempted by law." MCL 211.2; MSA 7.2. In this case, petitioner argued, and the Tax Tribunal agreed, that the subject greenhouses are personal property exempted from taxation pursuant to MCL 211.9(j); MSA 7.9(j), which provides a personal property tax exemption for property "actually being used in agricultural operations . . . including . . . the growing and harvesting of an agricultural, horticultural, or floricultural commodity."

The first question before us, therefore, is whether the Tax Tribunal erred in determining that petitioner's greenhouses are personal property rather than real property. This appears to be a question of first

impression in this state.[1] Whether property qualifies as personal or real for purposes of taxation is determined by application of the following three tests: (1) whether the property was actually or constructively annexed to the real estate; (2) whether the property was adapted or applied to the use or purpose of that part of the realty to which the property in question is connected or appropriated; and (3) whether the property owner intended to make the property a permanent accession to the realty. *Dick & Don's Greenhouses, Inc v Comstock Twp*, 112 Mich App 294, 297; 315 NW2d 573 (1982); *Sequist v Fabiano*, 274 Mich 643, 645; 265 NW 488 (1936); *Peninsular Stove Co v Young*, 247 Mich 580, 582; 226 NW 225 (1929); *Morris v Alexander*, 208 Mich 387, 390-391; 175 NW 264 (1919). With respect to the intention of the property owner,

> [t]he intention which controls is that manifested by the objective, visible facts. The permanence required is not equated with perpetuity. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose. [*Michigan Nat'l Bank, Lansing v Lansing*, 96 Mich App 551, 554; 293 NW2d 626 (1980).]

---

[1] Although this Court in *Dick & Don's Greenhouses, Inc v Comstock Twp*, 112 Mich App 294, 298; 315 NW2d 573 (1982), stated that greenhouses similar to those at issue in this case were "clearly real property," the Tax Tribunal correctly noted that the landowners in *Dick & Don's* admitted that their greenhouses were real property, but argued that the structures were exempt as personal property pursuant to MCL 2.118(d); MSA 7.8(d) because they were located on leased land. Thus, the issue in *Dick & Don's* was whether a greenhouse was exempt personal property because it was a building placed on leased land, as opposed to the issue presented in this case whether the subject greenhouses are personal or real property for purposes of taxation.

Although the Tax Tribunal, in applying these three tests, employed the correct analysis, we disagree with its conclusion that the subject greenhouses are personal property. In our opinion, we conclude that the greenhouses are clearly annexed to the real estate and thus taxable as real property. Our conclusion is supported by three opinions from other jurisdictions that analyzed similar issues. In *Hawkins v Van Zandt Co Appraisal Dist*, 834 SW2d 619, 620-622 (Tex App, 1992), the Texas Court of Appeals held that polyethylene "winter protection structures" were "structures" or "fixtures" rather than tax exempt "equipment" or "machinery" used as an "implement of husbandry" under the appropriate Texas exemption statute. The structures were similar to the greenhouses in the present case: the structures were up to ten feet high, thirty-six feet wide and 148 feet long; the structures were framed using a galvanized metal pipe inserted into a metal pipe sleeve that was embedded two feet into the ground; the frame consisted of pipes that were bolted together; the floors were gravel; and, the structures were covered with polyethylene sheeting. In addition, the structures could not be removed intact but had to be completely "deconstructed" in order to relocate them and lasted anywhere from seven to forty years. Under these facts, the Texas court found that the structures were not exempt from taxation as implements of husbandry.

In reaching its conclusion, the Texas court relied on *Maines v Bd of Assessors*, 125 AD2d 951; 510 NYS2d 348 (1986), and *Green Circle Growers, Inc v Lorain Co Bd of Revision*, 35 Ohio St 3d 38; 517 NE2d 899 (1988), both of which determined that greenhouses were structures taxable as real estate. In

*Maines, supra,* the New York Supreme Court, Appellate Division, applied a common-law test similar to that employed in Michigan to determine whether certain greenhouses were taxable as real estate. The New York court held that the greenhouses were structures of sufficient size and weight to be deemed annexed or appurtenant to land even though the greenhouses' posts were not embedded into the ground. The court further noted that a greenhouse could be affixed to the ground by gravitation as well as by clamps or cement. The court also concluded that the greenhouses were not "readily removable" because it took six or eight hours to dismantle them.

In *Green Circle, supra,* the Ohio Supreme Court held that polyethylene greenhouses, which consisted of a metal pipe frame bolted to metal pipes embedded in concrete, assembled over a concrete surface, and heated by a series of satellite boilers and hot water piping systems, were structures and thus fell within the statutory definition of real property for purposes of ad valorem taxation. Although *Green Circle* is distinguishable from the present case, because the Ohio statute at issue defined taxable real property to include a structure or building located on land, which is otherwise considered personal property, *id.* at 39, the case is instructive because the court considered the greenhouses to be structures "erected upon the taxpayer's real estate" and "attached to the realty by placement of metal sleeves into post holes anchored in concrete" in a method similar to petitioner's greenhouses. *Id.*

In our opinion, petitioner's greenhouses are clearly annexed to the real estate because the structures are bolted to stubs embedded in concrete and attached to

the realty by both bolts and gravity. Further, petitioner has attached garage doors and large wall fans to the greenhouses, installed gas pipes and heaters to the support bars, and placed ten-foot-wide cement sidewalks in the greenhouses. Finally, the greenhouses are used continuously rather than seasonally. Accordingly, we conclude that the Tax Tribunal erred as a matter of law when it concluded that petitioner's greenhouses were not actually or constructively annexed to the real estate.

The Tax Tribunal also found that the greenhouses have not been adapted to the use of the real estate. We disagree. The real estate in question is not vacant land but, rather, has been appropriated and adapted for use as a commercial nursery requiring greenhouses to produce plants. Because greenhouses cover over 11.6 acres of the real estate, the Tax Tribunal's conclusion that the greenhouses have not been adapted to the purpose of a commercial nursery is erroneous. Accordingly, the Tax Tribunal erred as a matter of law in determining that the greenhouses were not adapted for the real estate's use as a commercial nursery.

Finally, the Tax Tribunal concluded that petitioner did not intend to make the greenhouses permanent because petitioner had moved portions of the greenhouses, which could be severed from the real estate by removing the stub bolts and unhooking the utilities. However, we disagree with the Tax Tribunal's conclusion that the objective, visible facts in this case established that petitioner did not intend for the greenhouses to be permanent accessions to the real estate. The intent to make a structure permanent is not equated with an intent to make the structure last

forever. See *Michigan Nat'l Bank, supra.* Rather, "[i]t is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose." *Michigan Nat'l Bank, supra* at 554.

Although it is possible for petitioner to disassemble and move the greenhouses, the evidence does not establish that the greenhouses have been moved or disassembled on a regular basis. Further, although petitioner presented evidence regarding the ease with which one bay of a greenhouse could be dismantled, petitioner presented no evidence regarding the amount of time necessary to construct or disassemble the greenhouses. Given that some of petitioner's greenhouses contain as many as forty-eight bays and are over two-hundred feet long, we conclude that the placement of numerous stubs in cement-filled holes is objective evidence that petitioner intended to erect a permanent structure. Further, although the cement sidewalks within the greenhouses are not technically foundations, a concrete sidewalk is an improvement over the bare ground and allows more efficient use of the greenhouses; therefore petitioner's construction of the concrete sidewalk is also evidence of an intent to make the structure permanent. Finally, although the greenhouses are bolted together and covered with plastic, the structures are permanent enough to hold large fans and gas heaters. Accordingly, we conclude that the Tax Tribunal erred as a matter of law when it concluded that the greenhouses were not intended to be permanent accessions to the real estate.

In sum, we hold that petitioner's greenhouses are fixtures annexed to the real estate and should be

taxed as such. The Tax Tribunal erred as a matter of law in concluding that the greenhouses were personal property subject to the agricultural tools exemption, MCL 211.9(j); MSA 7.9(j).

Having concluded that petitioner's greenhouses are real property for purposes of taxation, we agree with the Tax Tribunal's conclusion that the polyethylene greenhouses were not exempt from real estate taxation pursuant to MCL 211.7bb; MSA 7.7(4y), which exempts from taxation a "nursery stock seasonal protection unit," which otherwise qualifies as real property, if among other things, "[f]or less than 34 weeks each year, the structure is covered by nonreusable plastic sheeting, shade cloth, or other similar removable material." MCL 211.7bb(2)(a); MSA 7.7(4y)(2)(a). The record in this case reveals that petitioner's greenhouses have remained in place for several years, far in excess of the thirty-four week a year limit for use of structures under MCL 211.7bb; MSA 7.7(4y).[2]

---

[2] Respondent argues that the Legislature, having specifically addressed the tax exemption pertaining to greenhouses in MCL 211.7bb; MSA 7.7(4y), foreclosed the possibility that petitioner's greenhouses might qualify for a personal property tax exemption pursuant to MCL 211.9(j); MSA 7.9(j). However, in our view, the proper analysis begins with the proposition that all property, real and personal, is subject to taxation unless expressly exempted. MCL 211.1; MSA 7.1. Therefore, a determination must first be made whether the property at issue is real or personal property for purposes of taxation. Contrary to respondent's contention, MCL 211.7bb; MSA 7.7(4y) is expressly and inferentially silent in this regard. Rather, MCL 211.7bb; MSA 7.7(4y) creates a real property tax exemption for certain temporary structures known as "nursery stock seasonal protection units." However, the exemption statute does not compel a conclusion that all greenhouses are realty rather than personalty. Michigan courts have traditionally looked to the common law to determine whether property is real or personal for purposes of taxation. See *Sequist v Fabiano*, 274 Mich 643; 265 NW 488 (1936); *Peninsular Stove Co v Young*, 247 Mich 580, 582; 226 NW 225 (1929); *Morris v Alexander*, 208 Mich 387; 175 NW 264 (1919); *Dick & Don's Greenhouses, supra*. Once a conclusion is reached with regard to whether property is real or personal, only then can

Accordingly, respondent's original assessment should be reinstated. In light of our resolution of this case, we need not reach respondent's remaining contentions.

Reversed and remanded. We do not retain jurisdiction.

---

we turn to the question whether a particular tax exemption is applicable to the property. The two statutes granting tax exemptions at issue in this case involve entirely different subject matters, namely, MCL 211.7bb; MSA 7.7(4y) creates a specific *real property tax exemption* for certain temporary structures, while MCL 211.9(j); MSA 7.9(j) creates a *general personal property tax exemption* for certain property used in agricultural operations. Although we recognize that, generally, "when two statues conflict and one is specific to the subject matter while the other is only generally applicable, the specific statute prevails," *Nat'l Center for Mfg Sciences, Inc v Ann Arbor*, 221 Mich App 541, 549; 563 NW2d 65 (1997), we discern *no conflict in these statutes that would give rise to a need to apply this general rule of statutory interpretation.*