# STATE OF MICHIGAN

# COURT OF APPEALS

---

WEST SHORE SERVICES, INC.,

        Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

        Respondent-Appellee.

UNPUBLISHED
July 21, 2015

No. 321085
Tax Tribunal
LC No. 00-449327

---

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Petitioner, West Shore Services, Inc., appeals as of right an order of the Michigan Tax Tribunal (MTT) granting respondent Department of Treasury's motion for summary disposition under MCR 2.116(C)(10) with respect to whether petitioner was required to pay use tax on warning sirens it distributes. The MTT concluded that the sirens, when attached to wooden poles that are sunk into the ground, were fixtures and subject to the use tax. The MTT ordered that petitioner owed $88,563 in use tax, with interest. We affirm.

## I. FACTUAL BACKGROUND

Petitioner is a distributor of outdoor warning sirens that alert people of impending dangerous weather. Nearly all of petitioner's customers are municipalities that had the sirens installed on public rights-of-way. Petitioner typically installs the sirens. When it does so, it attaches them to 50-foot wooden poles. The installation process begins by boring an eight-foot deep hole in the ground with an auger. Then, as depicted in photographs included in the record, the poles are placed into the holes with the assistance of an industrial crane. Fill dirt is placed around the pole to secure it in place; no additional measures are taken to support the pole and attached siren. The sirens are hooked up to a local power source by an electrician.

According to an affidavit from petitioner's president, Jeffrey DuPilka, the poles and sirens can be removed in approximately 50 minutes by workers using large industrial equipment or an "auger truck." Despite the fact that heavy machinery is involved in the removal process, DuPilka averred that the 50-foot poles are designed to be "easily removed." Once removed, the ground is typically returned to the same condition it was in before the installation. According to Dupilka's affidavit, the installation process is meant to be "fluid" to allow easy relocation when

necessary to "accommodate ever changing road structure." This also allows for relocation in the event of "changing coverage needs" and possible upgrades.

Respondent conducted an audit and determined that petitioner had a use tax deficiency from April 1, 2006 until March 31, 2010, because it did not pay use taxes on the poles and warning systems, which respondent considered to be fixtures attached to the adjacent real property. Petitioner contended that the sirens were not fixtures, but rather were tangible personal property. Accordingly, petitioner argued that it is a retailer, not a contractor, under the Use Tax Act, MCL 205.91 *et. seq.*, and thus not subject to the use tax. Respondent contended that the sirens were fixtures and that petitioner was a contractor subject to the use tax. The hearing referee agreed with respondent. He explained that petitioner's installation process was sufficient to annex the sirens to the real property. Moreover, the referee concluded, even if they were not actually annexed, the sirens and poles were constructively attached to the realty "by virtue of their size, weight and method of installation." The referee also found that the sirens were adapted to the purpose of the land and intended to be part of the realty. Accordingly, the referee concluded that petitioner was liable for the use tax and issued a proposed order granting summary disposition to respondent. The MTT concurred in the referee's findings and legal conclusions and adopted the proposed order as its final decision.

## II. STANDARD OF REVIEW

"The Tax Tribunal's determination of a motion for summary disposition is reviewed de novo." *Sietsema Farms Feeds, LLC v Dep't of Treasury*, 296 Mich App 232, 235; 818 NW2d 489 (2012). "In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Id.* at 236 (citation and quotation marks omitted).

## III. ANALYSIS

Michigan's use tax is assessed "for the privilege of using, storing, or consuming tangible personal property in this state . . . ." MCL 205.93(1). "The legal incidence of the use tax falls upon the consumer or purchaser." *Combustion Engineering v Dep't of Treasury*, 216 Mich App 465, 468; 540 NW2d 364 (1996). A consumer includes a "person acquiring tangible personal property if engaged in the business of constructing, altering, repairing, or improving the real estate of others." MCL 205.92(g)(*i*). The parties contend that the central issue in this case is whether the warning sirens and poles are fixtures annexed to real property.

"[T]he term 'fixture' necessarily implies something having a possible existence apart from realty, but which may, by annexation, be assimilated into realty." *Wayne Co v Britton Trust*, 454 Mich 608, 614-615; 563 NW2d 674 (1997). While there is no bright-line test for determining whether an item has become sufficiently attached to real property so as to constitute a fixture, our Courts have traditionally examined three factors on a case-by-case basis. *Granger Land Dev Co*, 286 Mich App 601, 610-611; 780 NW2d 611 (2009). "Property is a fixture if (1) it is annexed to the realty, whether the annexation is actual or constructive; (2) its adaptation or application to the realty being used is appropriate; and (3) there is an intention to make the

property a permanent accession to the realty." *Wayne Co*, 454 Mich at 610. See also *Ottaco, Inc v Gauze*, 226 Mich App 646, 651; 574 NW2d 393 (1997).

As to the first consideration—annexation to the realty—annexation may be actual or constructive, and there can be "innumerable ways that a person can affix personal property to real estate[.]" *Granger*, 286 Mich App at 610. Annexation can be actual, meaning that the item is physically attached to the real estate. *Id.* Alternatively, annexation can be constructive, based on the size and character of the item at issue. *Id.*, citing *Velmer v Baraga Area Sch*, 430 Mich 385, 395; 424 NW2d 770 (1988) (opining that a milling machine in a high school shop classroom could be constructively affixed to the realty because of its weight and size). As to the second consideration—adaptation to the realty—our courts have considered whether the object was "a necessary or at least a useful adjunct to the realty, considering the purpose to which the latter is devoted." *Wayne Co*, 454 Mich at 619, quoting 35 Am Jur 2d, Fixtures § 12. As to the third consideration—intention—courts are to consider the intention of the annexor "as manifested by the objective, visible facts, rather than the annexor's subjective intent." *Ottaco*, 226 Mich App at 651. "Intent may be inferred from the nature of the article affixed, the purpose for which it was affixed, and the manner of annexation." *Wayne Co*, 454 Mich at 619. "The surrounding circumstances determine the intent of the party making the annexation, not the annexor's secret subjective intent." *Id.* Additionally, while the intent analysis speaks of permanence, "[t]he permanence required is not equated with perpetuity. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose." *Tuinier v Bedford Charter Twp*, 235 Mich App 663, 668; 599 NW2d 116 (1999) (citation and quotation omitted). Likewise, that it is possible to remove an item is not dispositive, particularly where the evidence does not establish that the item has been removed or disassembled on a regular basis. *Id.* at 672.

Applying these factors to the instant case, we find that the MTT did not err in concluding that the sirens and poles were fixtures. As to the first factor, the poles were physically annexed to the realty. Although petitioner seeks to minimize its importance, we note, as did the referee, that the wooden poles were placed, using a crane, into an eight-foot hole in the ground. In other words, petitioner took affirmative steps to affix the poles directly to the realty. See, generally, *Outdoor Sys Advertising, Inc v Korth*, 238 Mich App 664, 671; 607 NW2d 729 (1999) (finding, albeit in the context of a "trade fixtures" analysis, that billboards were annexed to real property where the billboards were large, installed in the ground, and had to be removed by crane). Petitioner seeks to divert our attention to the fact that it did not use concrete, cables, wires, or bolts to affix the poles to the ground; however, petitioner ignores that the poles remained, from our review of the record, securely in place without the assistance of concrete, cables, or wires. Thus, concrete, cables, and/or wires may not have been necessary, and the fact that petitioner did not find it prudent to use them to affix the poles in this case does not control our analysis. Indeed, the poles are large and are, by all accounts, only moved with heavy equipment. Securing them further was likely unnecessary given their size and immobile nature.

As to adaptation, our Supreme Court has explained that this phase of the analysis is concerned with "the relationship between the chattel and the use which is made of the realty to which the chattel is annexed." *Wayne Co*, 454 Mich at 618 (citation and quotation marks omitted). "[A]n object introduced onto the realty may become a fixture if it is a necessary or at

-3-

least a useful adjunct to the realty, considering the purposes to which the latter is devoted." *Id.* at 619, quoting 35 Am Jur 2d, Fixtures, § 12. Here, there is no dispute that the land on which the poles and sirens were placed was devoted for public use as a public right-of-way. In a broad sense, the poles and sirens are also dedicated for public use; they warn the public of impending hazardous weather conditions. In this sense, the poles and sirens are consistent with the purpose to which the right-of-way is devoted and can be considered as useful adjuncts to the realty. Thus, the poles and sirens are somewhat akin to road signs or other warning signs that are often present in public rights-of-way. They provide a benefit to those traveling nearby and to the public at large by broadcasting a warning to the public.

Finally, concerning intent, we find that the objective, visible facts show an intent that the poles and sirens be a permanent accession to the realty. See *Ottaco*, 226 Mich App at 651. See also *Wayne Co*, 454 Mich at 619 (explaining that intent may be inferred from the nature of the article, the purpose for which it was affixed, and the manner in which it was annexed to the realty). Here, the objective, visible facts reveal that the poles were large—50-feet in height— and were only moved through the use of heavy equipment. Further, the facts show that petitioner installed the poles by using heavy equipment to first dig an eight-foot hole into the ground. Then, using a crane, petitioner hoisted the 50-foot pole into the freshly-dug hole. This effort required to move the large poles suggests a degree of permanency. Moreover, the purpose of the sirens as a warning system manifests an intent that the poles and sirens remain in place. Indeed, a warning system such as the one at issue in this case is of little value if it is not continuously set in place to warn of approaching hazardous weather conditions.

With regard to intent, petitioner is quick to point out DuPilka's assertions that the poles and sirens were "easily removable." This claim is slightly misleading, as petitioner ignores that removing the poles requires the assistance of a *crane and trained workers* to do the job. That something can be removed in under an hour with workers and heavy machinery does not mean that it can "easily be removed" or that it can be displaced on a whim. Petitioner's argument also ignores that the utility of the poles comes partially from their stability and relative permanence, as well as their ability to withstand the very weather conditions about which they were designed to warn the public. Petitioner's argument also attempts to elevate DuPilka's opinion that the poles are designed to be easily moveable, over the objective, visible facts demonstrating that the poles are large and can only be moved with heavy machinery. See *Wayne Co*, 454 Mich at 619 (emphasizing that the focus on the intent prong is *not* the annexor's subjective intent, but rather, the objective, visible facts). Further, the fact that the poles are occasionally moved is not dispositive, particularly in light of the fact that it takes a significant amount of effort to move them and that they are not moved with regularity. See *Tuinier*, 235 Mich App at 672.

In resolving this issue, we note that petitioner places significant importance on our decision in *Granger*, 286 Mich App 601. It argues that the mere fact that something is placed into the ground is not indicative of whether it was intended to be a fixture. On the surface, petitioner's arguments appear to have some merit. However, upon digging into *Granger* and its reasoning, we unearth several holes in petitioner's arguments. In order to sift through petitioner's claims, we briefly uncover the facts and reasoning employed in *Granger*.

At issue in *Granger* was whether "cells" operated on landfills owned by the plaintiffs, Granger Land Development and Granger Waste Management Company, were fixtures. *Id.* at

603. The cells were designed to capture methane gas and to circulate wastewater so that the plaintiffs could sell methane gas, which was burned to generate electricity. *Id.* at 603-604. The cells were made of an impermeable barrier that was placed on an area of land; the barrier was designed to ensure that liquids did not contaminate the groundwater and to help capture wastewater. *Id.* at 604. The plaintiffs then placed uniform layers of waste on the barrier, using heavy machinery to compact the waste. *Id.* The plaintiffs used loaders and bulldozers to distribute the waste in the cell. *Id.* As the waste accumulated in a cell, the plaintiffs placed pipelines inside the layers of waste to capture the gas generated while the waste decomposed. *Id.* at 605.

During and after the useful life of a cell, the plaintiffs took measures to prevent the cells from affecting the surrounding land. For instance, the plaintiffs sprayed an organic cover over the cells to prevent waste from blowing away and to inhibit the escape of gas. *Id.* When the cells were full, the plaintiffs capped them with material to reduce outside air infiltration. *Id.* They also placed yet another barrier over the cells to prevent gas from escaping and to prevent water from entering the cells. Finally, the plaintiffs covered that barrier with two feet of soil and vegetation in order to prevent erosion. *Id.*

In deciding, for purposes of the use tax, whether the cells were fixtures, this Court analyzed the three factors noted above. *Id.* at 610-611. We examined the "unique facts" of that case and determined that the cells were neither constructively nor actually attached to the real estate. *Id.* at 611. Regarding actual attachment, we noted that the plaintiffs took "no affirmative steps to actually attach the cells to its real property." *Id.* at 612. Likewise, with regard to constructive annexation, we noted the effort that the plaintiffs took to insulate the waste in the cells from the real property in order to prevent the waste from contaminating the real property. *Id.* In other words, the cells were on, but not a part of, the real property.

"For the same reasons," we concluded that the cells were not adapted to the land, nor were they constructed to facilitate the use of the land. *Id.* at 612. In addition, the objective, visible facts did not show an intent that the cells remain in place permanently, as they were intended to be maintained as separate processing units, and thereafter were abandoned on the property when they ceased to be commercially viable. *Id.* at 613. Lastly, in deciding that the cells were not fixtures and therefore were exempt from the use tax in that case, we found "noteworthy that our resolution of this issue prevents the type of pyramiding [multiple layers of taxation] that the Legislature intended to alleviate by enacting" the exemption at issue. *Id.* at 613 n 4.

The instant case is distinguishable from *Granger* and the facts of this case show that the poles were fixtures. Unlike in *Granger*, petitioner in the instant case took affirmative steps to attach the poles to the ground. Unlike the plaintiffs in *Granger*, petitioner did not simply pile garbage into layers in a particular area of land. Rather, petitioner dug holes into the ground, and, through the use of heavy equipment, set the poles in place and backfilled them to keep them there. This type of affirmative attachment was lacking in *Granger*. Additionally, where the plaintiffs in *Granger* took steps to prevent the cells from becoming integrated into the land, petitioner in this case directly integrated the poles into the land by digging holes and setting the poles into the aforementioned holes. Further, as noted above, the poles were adapted to and useful to the land. Finally, the intent in this case showed that the poles were to be part of the

land, not maintained insulated from the land like the separate processing cells at issue in *Granger*.[1]

In sum, we find that the poles and sirens at issue were fixtures. The MTT did not err in ordering that petitioner owed the use tax.

In reaching this conclusion, we note that petitioner raises, for the first time on appeal, an argument that the poles and sirens at issue cannot be fixtures because they were primarily installed on rights-of-way, which it contends were personal property, not realty. Petitioner contends that the poles cannot be fixtures if they were not installed on realty. As an initial matter, we need not consider this unpreserved argument because petitioner never raised it before the MTT. *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). And, to the extent we consider the issue for plain error affecting substantial rights, see *id.*, we find it to be meritless. Petitioner cites no authority that would support the proposition that improvements on rights-of-way cannot constitute fixtures attached to real property under either the General Property Tax Act, MCL 211.1 *et seq.* or the Use Tax Act. Further, petitioner neither cites authority nor presents a convincing argument that the rights-of-way at issue in this case do not fall within MCL 205.92(g)(*i*), which references "the real estate of others."

Affirmed.


/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[1] We also note that this case does not involve the "noteworthy" consideration that influenced the panel's decision in *Granger*, i.e., avoiding "pyramiding" or multiple layers of taxation.