# Court of Appeals, State of Michigan

# ORDER

| | |
|---|---|
| Brunt Associates, Inc. v Department of Treasury | Donald S. Owens<br>Presiding Judge |
| Docket No. 328253 | Joel P. Hoekstra |
| LC No. 00-461270 | Jane M. Beckering<br>Judges |

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued November 17, 2016 is hereby VACATED. An amended opinion with minor clarification based on the issues briefed by the parties associated with the motion for reconsideration is attached to this order.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JAN 03 2017

Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

BRUNT ASSOCIATES, INC.,

    Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

    Respondent-Appellee.

FOR PUBLICATION
January 3, 2017
9:00 a.m.

No. 328253
Michigan Tax Tribunal
LC No. 00-461270

## ON RECONSIDERATION

Before: OWENS, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Petitioner Brunt Associates, Inc., appeals by right from a final order and judgment of the Michigan Tax Tribunal holding petitioner liable for a use tax deficiency. At the time of the hearing, petitioner owed $305,234.52 in use tax, plus accruing interest. For the reasons stated below, we affirm the tribunal's decision.

## I. STATEMENT OF FACTS

Petitioner is a domestic for-profit company in the business of producing and installing custom office furnishings and interior finishes, such as custom cabinetry, decorative panels, and freestanding furniture, for commercial applications. In August of 2006, respondent Department of Treasury opened a sales and use tax audit of petitioner's books that eventually covered the period November 1, 2005 through December 31, 2009. The auditor found that petitioner had reported no use tax during the audit period and was actually remitting use tax as sales tax. The auditor further found that petitioner is a real property contractor that did not make any sales at retail, and concluded that petitioner owed $284,082 in use tax, plus $41,674 in interest, for a total of $325,756.[1] On September 28, 2010, respondent issued petitioner a notice of intent to assess, followed by a final assessment on December 7, 2010.

---

[1] On May 5, 2014, respondent amended the audit using additional information provided by the petitioner. The amendment resulted in a $21,152.52 increase in use tax owed, bringing petitioner's total use tax deficit to $305,236, excluding interest.

-1-

On October 9, 2013,[2] petitioner filed a verified petition in the tax tribunal, alleging that it did not owe use taxes, that it had not engaged in activity during the audit period that would produce use taxes, and that the transactions for which the auditor had assessed use taxes involved customers with tax exemptions. In a prehearing statement submitted several months later, petitioner alleged that it was an industrial processor, that it made sales of tangible personal property at retail, and that it made retail sales to tax-exempt customers. With the tribunal's permission, petitioner amended its petition to accord with its prehearing claims. Petitioner further indicated that the "furniture, fixtures, cabinets, shelves, and decorative panels" it installs retain the character of tangible personal property after installation, are removable without impairing the value of the realty, and do not "serve the function of the realty. Respondent answered by calling attention to petitioner's response to a question in respondent's first set of interrogatories in which petitioner stated that it was a "carpentry contractor" and "does not sell products, only carpentry services." Petitioner moved to withdraw and amend its answers to respondent's first set of interrogatories. The tribunal denied petitioner's request, but allowed the amended answers to remain part of the record as supplemental responses.

At the tribunal hearing, Brian Brunt, petitioner's manager, explained that petitioner is a "finish carpentry contractor" that produces and installs custom office furnishings and interior finishes such as reception desks, nurses stations, cabinets, and finished components for break rooms, typically in consultation with a design team. He explained that petitioner manufactures the custom-ordered pieces in its workshop, delivers them to jobsites, and uses its own workforce to install them. Brunt said that some of the furnishings and finishes were attached to customers' buildings with screws, bolts, clips, or fasteners, but could be removed without damaging the realty. Larger, freestanding furnishings, such as reception desks, although transported in sections, reassembled at the job site, and held in place by their size and weight, could also be removed without causing damage. Brunt surmised from his experience working with the general contractors and interior designers that they had not intended for petitioner's products to be permanent affixations to realty, and explained that all of petitioner's furnishings, cabinets, and wall panels were decorative and that nothing required engineer's drawings or structural approval.

David Rea, petitioner's accountant, testified that, based on his knowledge, petitioner was a manufacturer/retailer, not a manufacturer/contractor. He opined that the items that petitioner sells to customers meets the definition of tangible personal property under the Sales Tax Act, and that the definition of tangible personal property was essentially identical under the Use Tax Act.

---

[2] The timeliness of petitioner's petition is not at issue. Respondent mailed the final assessment to petitioner's address of record in December of 2010. However, respondent did not mail the final assessment to petitioner's authorized representative. In *Fradco, Inc v Dep't of Treasury*, 495 Mich 104; 845 NW2d 81 (2014), Michigan's Supreme Court held that the appeal period did not begin to run until respondent provided actual notice to both the taxpayer, MCL 205.28(1)(a), and the taxpayer's personal representative as provided in the taxpayer's written request, MCL 205.8. Thus, the appeals period in the instant case began to run on September 19, 2013, the date petitioner's representative received actual notice of the final assessment. Therefore, petitioner's petition to the tribunal was timely.

He further opined that things that could be moved and put into a different room had nothing to do with constructing, altering, or repairing real estate.

Testifying with regard to her audit findings, respondent's auditor said she determined that petitioner was a contractor and not a retailer from the initial audit conference with Rea, where she was told that petitioner did not maintain an inventory, provide a publication list or price list, or make retail sales. She also based her determination on the nature of petitioner's business activities. The auditor further stated that she based her conclusion that the items fabricated by petitioner did not retain their character of tangible personal property on her understanding that petitioner affixed the items to the realty of its customers. She testified that she derived her understanding of petitioner's business from petitioner's business classification, a discussion with Rea, a review of petitioner's website explaining their business activities, and a discussion with her supervisor. The auditor denied that her conclusion that petitioner was a contractor would change even if certain pieces of furniture and equipment were not attached to realty, and affirmed that freestanding desks and other items would be considered permanently affixed to realty for purposes of the audit.

Both parties submitted post-hearing briefs, summing up the arguments they had advanced at the hearing. Petitioner argued that it was a retailer because it manufactured tangible personal property for sale, with installation, for the use and consumption of its customers. Petitioner further argued that it was entitled to an industrial processor exemption because it "changes the form, composition, quality, combination or character of tangible personal property for ultimate sale at retail." Finally, petitioner asserted that it was not a contractor because "the manufactured products never become a permanent affixation to the realty after installation." Respondent argued that petitioner was a real property contractor and was not entitled to an industrial processing exemption because it did not ultimately sell its products at retail.

In a written opinion and judgment, the tribunal found that petitioner affixed its products to the realty of its customers, either actually or constructively, concluding therefrom that petitioner is a contractor liable for use tax on all of its products, regardless of how they were affixed to customers' realty. The tribunal further concluded that petitioner was not entitled to an industrial processing exemption, and affirmed respondent's final assessment of $305,234.52 owed in use tax, and the interest accruing thereon. After the tribunal denied petitioner's motion for reconsideration, petitioner filed a timely appeal with this Court.

II. ANALYSIS

Petitioner first contends that the tribunal erred in concluding that it was a construction contractor engaged in the business of constructing, altering, repairing, or improving the real estate of others. We disagree. Because fraud has not been asserted, our "review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Michigan Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808, cert den 513 US 1016; 115 S Ct 577; 130 L Ed 2d 492 (1994). "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence required in most civil cases." *Dow Chem Co v Dep't of Treasury*, 185 Mich App 458, 463; 462 NW2d 765 (1990). To the extent that

-3-

resolution of an issue involves a question of statutory interpretation, review is de novo, with the agency's interpretation given "respectful consideration." *Devonair Enterprises, LLC v Dep't of Treasury*, 297 Mich App 90, 96; 823 NW2d 328 (2012).

Under the Use Tax Act (UTA), MCL 205.91 *et seq.*, every person[3] in Michigan who purchases tangible personal property is subject to a use tax "for the privilege of using, storing, or consuming tangible personal property in this state . . . ." MCL 205.93(1). "The provisions of the [UTA] complement those of the General Sales Tax Act [GSTA], MCL 205.51 *et seq.*, and were generally designed to avoid the imposition of both use and sales tax on the same property." *Granger Land Dev Co v Dep't of Treasury*, 286 Mich App 601, 608; 780 NW2d 611 (2009) (citations omitted). Thus, a person who purchases property for resale is exempt from paying use tax as long as the purchaser does in fact resell the property. MCL 205.94(1)(c)(*i*) and (2). Exemption statutes are strictly construed in favor of the taxing unit, *Mich Baptist Homes & Dev Co v City of Ann Arbor*, 396 Mich 660, 670; 242 NW2d 749 (1976). "[T]he burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt." *Evanston YMCA Camp v State Tax Comm'n*, 369 Mich 1, 8; 118 NW2d 818 (1962) (quotation marks and citation omitted).

It is undisputed that petitioner is a manufacturer. The question is whether petitioner is a retailer liable only for sales tax or a contractor liable for use tax. Neither the GSTA nor the UTA define "contractor"; however, Mich Admin Code, R 205.71 provides the following guidance:

> (1) "Contractor" includes only prime, general, and subcontractors directly engaged in the business of constructing, altering, repairing, or improving real estate for others.

> \* \* \*

> (6) Where a manufacturer affixes his product to real estate for others, he qualifies as a contractor and shall remit use tax on the inventory value of the property at the time the property is converted to the contract which value shall include all costs of manufacturing, fabricating, and processing. . . .

The dispositive issue with regard to whether petitioner is a contractor is whether petitioner "affixes his product to real estate for others." Mich Admin Code, R 205.71(6).

Petitioner argues that it is not a contractor because, although it affixes some of its furnishings and finishes to the real estate of its customers using bolts, clips, fasteners, or screws, these products, as well as its freestanding furniture, can easily be removed without damaging the product or diminishing the value of the customer's realty. However, contrary to petitioner's implication, that an item is removable is not dispositive of whether it is attached to realty. See *Miedema Metal Bldg Sys, Inc v Dep't of Treasury*, 127 Mich App 533; 338 NW2d 924 (1983)

---

[3] "Person" includes firms. MCL 205.92(a).

(affirming that grain bins bolted to a concrete foundation but easily removable were attached to realty nonetheless). The unobtrusiveness of the hardware petitioner uses to attach its products and the alleged ease and speed with which its products, whether attached or freestanding, can be removed in no way negates the fact that the petitioner physically attaches some of its products to its customers' buildings, and constructively attaches others. See *Velmer v Baraga Area Sch*, 430 Mich 385, 395; 424 NW2d 770 (1988) (indicating that, although not bolted to the floor, the milling machine at issue was constructively "affixed" to realty by reason of its weight).

In like vein, petitioner asserts that its products retained their character of tangible personal property after installation, and contends that the tribunal committed legal error when it failed to use the "3-part fixture test"[4] to determine whether its products were sufficiently attached to its customers' realty to consider them as part of the realty. We find this argument without merit.

In the case at bar, the first two prongs of this test were not in dispute. Brunt testified that petitioner's products were physically attached to customers' realty with screws, bolts, clips or fasteners, or constructively attached by means of the products' size or weight. In addition, Brunt testified that petitioner manufactures products to fit the specific needs and space of its customers, which indicates that the petitioner's products were adapted to the use or purpose of that part of the customers' buildings to which it was attached.

That petitioner's products were intended to be permanent accessions to realty is clear from the nature of the products (wall paneling, lecture hall desks, large nurses stations, etc.), the essential functions they fulfill in the businesses of petitioner's customers, and their actual or constructive attachment to customers' buildings. Further, petitioner testified that, once attached, its products are rarely removed, and then only for repair, after which they are reinstalled. See *Tuinier v Bedfort Charter Twp*, 235 Mich App 663, 668; 599 NW2d 116 (1999) (noting that, with regard to intent, the "permanence required is not equated with perpetuity. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose."). Accordingly, the tribunal found that petitioner is a contractor who affixed its products to realty, and is subject to use tax pursuant to Mich Admin Code, R 205.71(6).

---

[4] To determine whether personal property has become sufficiently affixed to real property such that it should be treated as part of the realty, Michigan courts examine:

> (1) whether the property was actually or constructively annexed to the real estate;
> (2) whether the property was adapted or applied to the use or purpose of that part of the realty to which the property in question is connected or appropriated; and
> (3) whether the property owner intended to make the property a permanent accession to the realty. [*Granger Land Dev Co*, 286 Mich App at 611, quoting *Tuinier v Bedfort Charter Twp*, 235 Mich App 663, 668; 599 NW2d 116 (1999); see also *Sequist v Fabiano*, 274 Mich 643, 645; 265 NW 488 (1936).]

In light of the foregoing, we conclude that the tribunal's finding that petitioner manufactures product that it affixes to the real estate of others, either actually or constructively, is conclusive because it is supported by competent, material, and substantial evidence on the whole record. *Michigan Bell Tel Co,* 445 Mich at 476. We further conclude that the tribunal did not err in applying the law or adopt a wrong principle when it concluded that petitioner is a "manufacturer" and "contractor" that "affixes [its] product to real estate for others" and is "directly engaged in the business of constructing, altering, repairing, or improving real estate for others" under Mich Admin Code, R 205.71.

Petitioner next contends that the tribunal erred by denying its claim to an industrial processing exemption and by failing to apportion its industrial processing claim properly.[5] We disagree.

We first turn to the question of whether petitioner is entitled to an industrial processing exemption. The UTA industrial-processing statute, MCL 205.94o, provides an exemption for persons engaged in industrial processing. MCL 205.94o(7) provides the following relevant definitions:

> (a) "Industrial processing" means the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state. . . .

> (b) "Industrial processor" means a person who performs the activity of converting or conditioning tangible personal property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state.

Property that is not eligible for an industrial processing exemption includes "[t]angible personal property permanently affixed and becoming a structural part of real estate . . . ." MCL 205.94o(5)(a). Petitioner contends that it is an industrial processor because it converts or conditions tangible personal property for ultimate sale at retail. Petitioner further contends that the exception to the industrial processor exemption does not apply to it because its products, even if affixed, are not a "structural part of real estate."

However, as set forth above, petitioner does not manufacture products for "ultimate sale at retail," and there is no record evidence that petitioner manufactures products for "use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state." MCL 205.94o(7)(b). Consequently, petitioner does not meet the statutory criteria for characterization as an "industrial processor." Because petitioner is

---

[5] An industrial processing exemption "is limited to the percentage of exempt use to total use determined by a reasonable formula or method approved by the department [of treasury]." MCL 205.94o(2).

not an industrial processor, we need not address the issue of apportionment under MCL 205.94o(2).

Affirmed.

/s/ Donald S. Owens
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering